UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RASHAD STRICKLAND,

    PLAINTIFF,

v.

CLASSIC CHEVROLET SUGAR LAND, LLC, ET AL.,

    DEFENDANTS.

Case No.: 4:22-cv-1286

**_JURY TRIAL DEMANDED_**

## COMPLAINT

Plaintiff Rashad Strickland ("Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendants Classic Chevrolet Sugar Land, LLC ("Classic") and Trans Union LLC ("TU") as follows:

## PRELIMINARY STATEMENT

1. This is an action for an actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1681, et seq. ("Fair Credit Reporting Act" or "FCRA").

2. Congress made the following findings when it enacted the FCRA:

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

1

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

3. The plain language of the FCRA prohibits a person from obtaining a consumer report from a CRA without a permissible purpose. 15 U.S.C. § 1681b(f). *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1214 (11th Cir. 2019).

4. The term "user" is undefined by the FCRA. However, anyone receiving a consumer report and applying it to a consumer is a user and must comply with the FCRA. *Zeller v. Samia*, 758 F. Supp. 775, 780 (D. Mass. 1991); *See also Kingery v. Quicken Loans, Inc.*, 629 Fed. Appx. 509, 513 (4th Cir. 2015) (defining "use" to be when a lender employs the consumer's score to achieve a purpose or objective); *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967, 973 (4th Cir. 1987).

5. A CRA may furnish a consumer report to a user if it reasonably believes the user intends to use the information in connection with the extension of credit, employment, insurance, license or government benefit or existing credit obligation. 15 U.S.C. § 1681b(a)(3)(A-E).

6. A user may obtain a consumer report if it has a "legitimate business need for the information" for: (1) a "business transaction initiated by the consumer;" or (2) to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C § 1681b(a)(3)(F)(i-ii). In other words, for one of the permissible purposes enumerated under the FCRA.

7. However,

> [a] person shall not use or obtain a consumer report for any purpose unless ... (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f). In other words, a user may not obtain a consumer report from a CRA when it does not have a permissible purpose.

8. The disclosure of consumers' credit files to third parties is known as an "inquiry" and inquiries are recorded consumer reporting agencies ("CRAs") as a request for the consumer's credit history.

9. Inquiries are items of information contained in a consumer's "file," as that term is defined by 15 U.S.C. § 1681(a)(g).

10. Trans Union records and retains inquiries in consumers' files.

11. Trans Union categorizes inquiries as either a "hard" inquiry or a "soft inquiry."

12. Hard inquiries are shared with third parties.

13. Hard inquiries reduce a consumer's credit score.

14. The number of hard inquiries in a twelve-month period may be a reason for a credit denial.

15. Consumer reporting agencies ("CRAs"), like Trans Union, are required by the FCRA to reinvestigate the accuracy of "any item of information" that is disputed by a consumer. 15 U.S.C. § 1681i(a)(1)(A).

16. As part of the reinvestigation, CRAs must notify the source of the disputed information about the dispute and provide the source with all relevant information provided by the consumer with the dispute. 15 U.S.C. § 1681i(a)(2)(A).

17. Despite the requirement, Trans Union does not reinvestigate inquiries disputed by consumers, including Plaintiff.

18. An "inquiry" on a consumer report is the identification of a person or business that obtained a consumer report from a CRA pertaining to the consumer in connection with a credit or other transaction involving the consumer.

19. Like other items on a consumer report (commonly known as a "credit report"), inquiry information is sometimes inaccurate. Yet, Trans Union ignores its legal obligation to reinvestigate disputed inquiries.

20. Trans Union has long been aware of its obligations to reinvestigate disputed inquiries.

21. Trans Union had the benefit of plain, unambiguous statutory language requiring a reasonable reinvestigation of "the completeness or accuracy of *any item* of information contained in a consumer's file" that is disputed by that consumer. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

22. Regulatory guidance from the Federal Trade Commission further elucidated a consumer reporting agency's duty to reinvestigate disputed inquiries or delete them. For example:

> When a CRA receives a dispute from a consumer alleging that an inquiry that appears in his/her file was not made by a person who had a permissible purpose for

4

> obtaining the consumer report, and those allegations are supported by the CRA investigation, the CRA has two options. It may either delete the inquiry as inaccurate, or inaccurate or amend the file to make the item "complete" by reflecting clearly that the inquiry was generated by a party who did not have a permissible purpose to obtain a consumer report on the consumer.

*See* Federal Trade Commission, 40 Years of Experience with The Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations 77. (2011).[1]

23. The Eleventh Circuit Court of Appeals has held CRAs, like Trans Union, violate Section 1681i(a)(1) if it fails to do a reasonable reinvestigation when a consumer disputes "information contained in his file." *Collins v. Experian Information Solutions, Inc.*, 775, F.3d 1330, 1335 (11th Cir. 2015) ("[a] file is simply the information retained by the consumer reporting agency.").

24. Other Courts of Appeals have for many years also instructed CRAs to reinvestigate any item that it reports and that a consumer disputes, regardless of the context. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-13 (3d Cir. 2010) (OFAC terrorist alerts that CRA keeps off site with another company but placed on its credit reports are in the consumer file and must be reinvestigated); *Morris v. Equifax Information Services, LLC*, 457 F.3d 460, 466-68 (5th Cir. 2006) (Equifax must reinvestigate store charge account that is on file kept by one of Equifax's affiliates but which can be sold by Equifax in its credit reports); *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986); *Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982); *Dennis v. BEH-1, LLC*, 520 F.3d 1067 (9th Cir. 2008).

25. Indeed:

> More than simply comporting with the plain language of the statute, [requiring reinvestigation of inquiry disputes] best serves to advance the purpose of FCRA's

---

[1] https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf ("40 Year Staff Report") (last visited on April 20, 2022).

5

reinvestigation requirements—ensuring the accuracy of the information used by creditors to determine a consumer's creditworthiness. As the Eleventh Circuit has noted, the standard of accuracy imposed by the FCRA "should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate credit reporting." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991). The interests of consumers and potential creditors are best served by deletion of hard inquiries that Equifax itself admits "misstate[ ]" the consumer's credit history. Consumer's credit scores are negatively impacted by fraudulent or inaccurate credit inquiries, and creditors are provided with an inaccurate portrait of the consumer's credit history. The only entity that benefits is Equifax, which does not have to expend resources reinvestigating disputed credit inquiries.

*Steed v. Equifax Information Services, LLC*, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016).

26. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

27. Trans Union has been sued thousands of times wherein an allegation was made that said defendant violated the FCRA.

28. Moreover, Trans Union is sued hundreds of times per year wherein an allegation is made that inaccurate information appears on a consumer's file that is not mine or the result of identity theft, or both.

29. In the regular course of business, Trans Union maintains records of lawsuits filed against it, and the lists of other similar incidents are readily accessible to said defendant.

## JURISDICTION & VENUE

30. This Court has jurisdiction pursuant to 15 U.S.C. §§ 1681p and 28 U.S.C § 1331.

31. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

6

## PARTIES

32. Plaintiff Rashad Strickland ("Plaintiff") is an adult individual and residing in this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

33. Defendant Classic does business in this judicial district and is a domestic corporation with its principal place of business located at 13115 Southwest Fwy., Sugar Land, Texas 77478. Classic is a "person" and a ""user" of consumer credit and other financial information, as said terms are defined and contemplated by the FCRA.

34. Defendant Trans Union does business in this judicial district and is a Delaware corporation with its principal place of business located at 555 W Adams St., Chicago, Illinois 60661. Trans Union is a CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

## FACTUAL ALLEGATIONS

### *Plaintiff's Experience with Classic*

35. On April 4, 2020, Plaintiff purchased a vehicle from Classic.

36. Plaintiff applied for financing with GM Financial to purchase the vehicle.

37. On April 4, 2020, GM Financial approved Plaintiff's application and opened an account ending in 3485***.

38. Notwithstanding, almost three weeks later, Classic submitted a credit application to SunTrust Bank, upon information and belief, in Plaintiff's name.

7

39. Classic submitted the application to SunTrust on April 22, 2020, without Plaintiff's knowledge, authorization, or consent.

40. As a result of Classic's request for Plaintiff's credit report, an unauthorized inquiry appeared on Plaintiff's Trans Union report.

41. Plaintiff did not give Classic permission to submit a credit application to SunTrust on his behalf or otherwise to pull his credit his credit report from Trans Union on or about April 22, 2020.

42. After learning Classic pulled his credit report without his permission, Plaintiff disputed the inquiry to Classic.

43. According to Classic, Eric Jones initiated the inquiry on behalf of Classic.

44. Thereafter, Classic apologized for the hard pull and attempted to persuade Plaintiff to refinance the vehicle.

45. Classic represented to Plaintiff it would contact SunTrust and explain the inquiry was made in error.

46. Over the next week, Plaintiff monitored his Trans Union report to determine whether SunTrust removed the unauthorized inquiry.

47. The inquiry remained on Plaintiff's file.

48. Plaintiff disputed the inquiry to SunTrust.

49. SunTrust referred Plaintiff back to Classic to remedy the problem as Classic initiated the unauthorized pull.

50. Notwithstanding, on May 5, 2020, SunTrust acknowledged the inquiry was made in error and stated it would request the CRAs, including Trans Union, to remove the inquiry from Plaintiff's credit files.

51. The inquiry remained on Plaintiff's Trans Union file.

52. Between May and November 2020, Plaintiff continued to challenge the unauthorized inquiry to Classic.

53. Plaintiff's disputes to Classic escalated to the owner, Jeff Sebastian. Sebastian said he "would look into it," but the inquiry remained on Plaintiff's Trans Union file.

### *Plaintiff's Experience with Trans Union*

54. In August 2020, Plaintiff obtained his Trans Union report and saw the SunTrust inquiry remained on his file.

55. In September 2020, Plaintiff disputed the inquiry to Trans Union by mail.

56. Trans Union did not send Plaintiff the dispute results, delete the inquiry or otherwise respond to Plaintiff's dispute.

57. In March 2021, Plaintiff made a second written dispute to Trans Union.

58. He sent his dispute to Trans Union by certified mail return receipt requested.

59. Trans Union received Plaintiff's dispute on March 12, 2021.

60. Trans Union did not send Plaintiff the dispute results, delete the inquiry or otherwise respond to Plaintiff's dispute.

61. The inquiry remained on his Trans Union credit file.

62. Trans Union did not respond to Plaintiff's dispute.

63. In May 2021, Plaintiff sent Trans Union another dispute of the inquiry by certified mail.

64. Trans Union received Plaintiff's dispute on June 25, 2021.

65. Trans Union did not send Plaintiff the dispute results, delete the inquiry or otherwise respond to Plaintiff's dispute.

66. The inquiry remained on his Trans Union file.

67. On August 27, 2021, Plaintiff sent Trans Union another dispute letter by certified mail. Again, he disputed the unauthorized inquiry and asked Trans Union to contact Classic. In support, he provided Trans Union with the telephone number for Classic and identified Jeff Sebastian, Eric Jones, and Francisco Rios to confirm the unauthorized inquiry. He also provided Trans Union with the Case Number for his dispute to SunTrust, which was included in SunTrust's May 2020 letter stating it instructed Trans Union to delete the inquiry.

68. Plaintiff also notified Trans Union he is a fraud victim and requested a copy of his free credit report due to fraud.

69. Trans Union did not send Plaintiff the dispute results, delete the inquiry, his credit report or otherwise respond to Plaintiff's dispute.

70. The inquiry remained on his credit Trans Union file.

71. In response to Plaintiff's disputes, Trans Union did not contact third parties, such as Classic or SunTrust, concerning the accuracy of the disputed information.

72. Trans Union also did not review underlying account documents for any inquiry disputed by Plaintiff, such as the application for credit or an authorization from Plaintiff for Classic to obtain Plaintiff's credit reports.

73. Trans Union did not make a reasonable inquiry into the disputed information.

74. Trans Union did not review all relevant information provided by Plaintiff related to the disputed information.

75. Upon information and belief, Trans Union prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information.

76. Despite Plaintiff's exhaustive efforts to date, Defendants have nonetheless deliberately, willfully, intentionally, recklessly, and negligently repeatedly failed to comply with the FCRA.

77. As of result of the defendants' conduct, Plaintiff has suffered unique and distinct actual damages in the form of lost credit opportunities, harm to his credit reputation and credit score, out-of-pocket expenses, interference with Plaintiff's normal and usual activities and emotional distress, including anger, anxiety, frustration.

78. At all times pertinent hereto, the defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendants herein.

79. At all times pertinent hereto, the conduct of the defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

80. The defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to the Plaintiff that are outlined more fully above and, as a result, the defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief as may be permitted by law for their violations of federal law.

### COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Classic)

81. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

82. Classic negligently failed to comply with the requirements of the FCRA, including Section 1681b.

83. Alternatively, Classic willfully failed to comply with the requirements of the FCRA, including Section 1681b.

84. As a result of Classic's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages, in an amount to be determined by the jury.

### COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Trans Union)

85. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

86. Trans Union negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1, and i.

87. Alternatively, Trans Union willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1, and i.

88. As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages, in an amount to be determined by the jury.

### JURY DEMAND

89. Plaintiff requests a jury trial on all claims.

### PRAYER

Wherefore, Plaintiff prays for judgment against the defendants as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

                            Respectfully submitted,

                            */s/ Micah S. Adkins*
                            Micah S. Adkins
                            S.D. TX BAR NO. 2338097
                            **THE ADKINS FIRM, P.C.**
                            One Lincoln Centre
                            5400 Lyndon B. Johnson Fwy., Suite 1200
                            Dallas, Texas 75240
                            (214) 974.4030 Telephone
                            MicahAdkins@ItsYourCreditReport.com
                            *COUNSEL FOR PLAINTIFF*
                            *RASHAD STRICKLAND*

**CERTIFICATE OF SERVICE**

I certify on April 21, 2022, I filed the foregoing paper using the CM/ECF System, which will electronically serve notification of same on the following counsel of record:

I certify on April 21, 2022, I caused the foregoing paper to be served by e-mail on the following counsel of record:

I certify on April 21, 2022, I caused the foregoing paper to be served by First Class U.S. Mail prostage pre-paid on the following:

| | |
|---|---|
| Classic Chevrolet Sugar, Land, LLC<br>Attn: Jeff Sebastian<br>13115 Southwest Fwy.<br>Sugar Land, TX 77479 | Trans Union LLC<br>c/o Registered Agent<br>The Prentice-Hall Corporation System, Inc.<br>2908 Poston Ave<br>Nashville, TN 37203-1312 |

*/s/ Micah S. Adkins*
Micah S. Adkins